UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DOUGLAS L. HUGHES                                                                                    PLAINTIFF

v.                          Civil No. 6:13-CV-6084

SHERIFF ED HOLLINGSWORTH
and SERGEANT AMY MARTIN                                                                    DEFENDANTS

**MEMORANDUM OPINION**

This is a civil rights action filed by Plaintiff, Douglas L. Hughes, pursuant to the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*.

Currently before the Court is Defendants' Motion for Summary Judgment (ECF No. 28); Memorandum in Support of Their Motion for Summary Judgment (ECF No. 29); and Statement of Facts (ECF No. 30). Plaintiff filed a Response to Motion For Summary Judgment utilizing a questionnaire from the Court. ECF No. 34.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 13. Pursuant to this authority, the Court finds this Motion is ready for decision and issues this memorandum opinion. ECF No. 23-1, 2.

**I.    BACKGROUND**

The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Hot Spring County Detention Center ("HSCDC") in Malvern, Arkansas. Plaintiff filed this Complaint on July 25, 2013. ECF Nos. 1, 34. Plaintiff alleges his constitutional rights were violated

1

when Defendants were deliberately indifferent to his medical conditions. ECF 34, p. 2. Plaintiff initially brought this action against Defendants in their official capacities only. ECF. No. 1 p. 4. He then filed an Amended Complaint on November 7, 2013 bringing the action against Defendants in both their official and personal capacities. ECF No. 14, p. 6.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

Because Plaintiff's allegations center on the same facts for both official and individual

capacity claims, they will be summarized first before addressing each in turn.

Plaintiff was booked into HSCDC on July 24, 2013. ECF. No. 34, p. 5. Plaintiff states he told HSCDC he was on prescribed medication, had diabetes and a heart condition, and was not in possession of all his medications. ECF No. 34, pp. 6-7. Plaintiff's intake form did not indicate any other medical conditions for HSCDC to be aware of, such as his liver transplant and his need for an immunosuppressive drug. ECF No. 29-2, p.1. Plaintiff states he was not given the medications in his possession until they had been checked in and approved by the doctor. ECF No. 34, p. 7. In his Response, he does not state when he started receiving the prescription in his possession at the time of his arrest, but disagrees with the statement that he started receiving them on July 25, 2013. ECF No. 34, p. 7. As to the prescriptions he did not have in his possession, HSCDC received confirmation on them from UAMS on August 2, 2013. ECF No. 34, p. 8. With the exception of his liver medication Prograf (generic name Tacrolimus), he began to receive these other medications when approved by UAMS. However, he states that they were never given properly and at times they tried to give him medication for other inmates. ECF No. 34, p. 9. Plaintiff's Inmate Medication Ledger shows regular administration of medication, with a few times where he was apparently out of medication and needed a refill at the beginning of his incarceration. ECF No. 29-3.

Prograf is an immunosuppressive medication which Plaintiff takes to prevent rejection of his liver transplant. ECF No. 34, pp. 1, 8. UAMS confirmed this prescription on August 2, along with Plaintiff's other drugs. Plaintiff did not start receiving this drug until August 5, 2013. ECF Nos. 34, p. 9; 29-2, p. 2. According to Defendants, the pharmacy needed to special-order the Prograf, which caused the delay. ECF No. 29-2, p. 2.

Plaintiff states that Defendant Martin gave orders for his blood sugar to be checked twice

3

daily, but this order was not followed, and his blood sugar was not checked regularly. ECF No. 34, p. 10. The Inmate Medication Ledger shows a number of gaps where his blood pressure and blood sugar were not checked. It shows three occasions where he refused to have his blood sugar taken. ECF. No. 29-3, p. 7. The Ledger shows Defendant Martin ordered his blood sugar to be checked at six o'clock in the morning and evening. ECF No. 29-3, p. 1. Defendant Martin testified that the jail records do not show that the blood sugar readings were taken as ordered, however "records confirm that his blood sugar was checked regularly and, on multiple occasions Mr. Hughes refused to have his blood sugar taken." ECF No. 29-2, p. 2. Defendant Martin does not indicate what other records she is referring to in this statement. Plaintiff admits that he refused blood sugar readings at times, but did so because it was "in the middle of the night when I was sleeping. . ." ECF No. 34, p. 11.

Plaintiff alleges he did not receive diabetic shots, blood sugar checks, and diabetic snacks for the first thirty days he was incarcerated. ECF No. 34, pp. 4, 13. He states he was denied routine blood work from December 2012 through August 2013. ECF No. 34, p. 3. As he was booked into HSCDC on July 24, 2013, the dates prior to his booking cannot apply to this claim. Plaintiff was taken for his monthly blood work on August 28, 2013. ECF. No. 34, p. 11.

Plaintiff agrees that HSCDC has UV lights in the ventilation system which are designed to prevent the spread of tuberculosis. ECF No. 34, p. 12. He did not contract tuberculosis while incarcerated, but "was locked up with some that had it." ECF No. 34, p. 13. He does not indicate how he knew these individuals had tuberculosis.

Plaintiff was released on an ankle monitor on September 19, 2013 to await transfer with the Arkansas Department of Correction. ECF No. 34, p. 12.

4

A.      **Official Capacity Claims**

Plaintiff's only possible official capacity argument is that the jail did not purchase his Prograf because "their insurance wouldn't cover it" and "they didn't want to pay for the meds." ECF No. 34, pp. 9, 14. He disagrees with Defendant's statement that the Prograf needed to be special ordered, stating "I told them Young's always had my meds." ECF No. 34, p. 9.

Defendants argue Plaintiff has made no allegations that could give rise to a claim of official capacity liability. ECF No. 33, pp. 3-4.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Plaintiff has not identified any policy, custom, or practice that violated his constitutional

5

rights. He has not provided proof of any policy, custom, or practice which violated his constitutional rights. Taken in the light most favorable to Plaintiff, at most, he alleged a ten day delay between when he was incarcerated and when all of his medications were confirmed by UAMS, and a thirteen day delay until he received his Prograf. There is no evidence that HSCDC did anything to delay the medication confirmation or purchase process. There is evidence, however, that Plaintiff contributed to the delay by failing to inform HSCDC of his liver transplant and immunosuppressive drugs at the time of his intake. After the initial delay, the Inmate Medication Ledger indicates that he received his Prograf regularly. ECF No. 29-3.

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 28.) is **GRANTED** as to Plaintiff's official capacity claims against all Defendants.

### B.   Individual Capacity Claims: Deliberate Indifference to Medical Needs

Plaintiff argues that both Defendants are individually liable for denying him medication and for not having properly licensed and experienced personnel administering medication. He further argues that the delay in receiving his Prograf could have caused his body to reject his liver transplant, and he suffered mental anguish due to worrying about his lack of diabetic care. ECF No. 34, pp. 13-15. He also alleges he was locked up with inmates who had tuberculosis, but does not allege any specific harm due to this action. ECF No. 34, p. 13.

Defendants argue Plaintiff has presented no evidence they were deliberately indifferent or that he was harmed in way by any delays. ECF No. 29, p. 7.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted

6

with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011)(citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation"). In evaluating a treatment delay for summary judgment purposes, the court "must accept facts as recited in prisoner affidavits as true..." *Wise v. Lappin*, 674 F.3d 939, 941 (8th Cir. 2012) (citing *Tlamka v. Serrell*, 244 F.3d 628, 634 (8th Cir. 2001.)(taking Plaintiff's statements as true, the record revealed trialworthy issues as to a treatment delay of two months for a broken jaw when prison medical providers had a diagnosis and recommendation for a specialist referral, Plaintiff repeatedly complained of pain and difficulty due to his injury, and the jaw deformity was physically obvious.)

It is well-established in the Eighth Circuit that corrections officers may deliver medication

to inmates, provided they are properly trained to record if inmates have accepted or refused the medication. *See e.g. Cody v. Hillard*, 599 F. Supp. 1025, 1056 (D.S.D. 1984), *decision aff'd*, 799 F.2d 447 (8th Cir. 1986), *on reh'g*, 830 F.2d 912 (8th Cir. 1987).  Therefore, Plaintiff's claims on this matter do not present a valid constitutional claim.

Plaintiff has not provided verifying medical evidence to show the delay in administering his Prograf from July 25, 2013 to August 5, 2013 caused any injury or detrimental effect.  I do find a delay of thirteen days to administer immunosuppressive drugs to be alarming.  However, this situation was created in part by Plaintiff, who failed to inform the HSCDC of his liver condition during the intake process, and by his failure to have this medication with him despite having several other medications. Fortunately, Plaintiff's bloodwork in August showed good liver lab results. ECF No. 29-6. Plaintiff was also released on September 19, 2013 and would have been free to contact his normal physician to have any additional tests he felt were necessary to sow detrimental effect. I see no evidence of any additional testing in the record.

Regarding Plaintiff's allegations concerning his diabetes, I do note that his inmate medication ledge shows a number of significant gaps where his blood pressure and blood sugar were not checked.  And I do not see any additional records submitted by Defendants to show that those gaps were incorrect.  However, Plaintiff has not  provided any evidence that he suffered any detrimental effect from the alleged lack of diabetic care. Indeed, some of this lack stemmed from his own refusal to have his blood sugar tested three times. ECF No.  29-7, p. 15.  Based on his own grievance about the snacks, it is also not clear that he was actually denied diabetic snacks.  Rather, he disagreed with the content of the diabetic snacks.  On August 24, 2013, Plaintiff grieved the diabetic snack provided because it was only "eight little vanilla cookies,"and did not include peanut butter or juice.

8

According to the response, the standard diabetic snack is orange juice and vanilla cookies. ECF No. 29-7, p. 15.

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 28.) is **GRANTED** as to Plaintiff's deliberate indifference to medical needs claims against all Defendants in their individual capacity.

## IV. CONCLUSION

For the reasons stated, the Defendants' motion for summary judgment (ECF No. 28) is **GRANTED**.

**IT IS SO ORDERED this 4th day of March 2015.**

/s/ Barry A. Bryant

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE